1

2

3

4

5                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
6                                    AT SEATTLE

7    ALVIN HEGGE, *et al*.,

8                              Plaintiffs,          Case No. C20-6170-BJR-MLP

9          v.
                                                    ORDER TO SHOW CAUSE
10   JAY INSLEE, *et al*.,

11                             Defendants.

12

13         This is a civil rights action filed by nineteen *pro se* prisoners, all of who were apparently

14   housed at the Stafford Creek Corrections Center ("SCCC") in Aberdeen, Washington at the time

15   the complaint was prepared. The complaint was originally filed in the United States District Court

16   for the Eastern District of Washington but was subsequently transferred to this District after it was

17   determined that all the Plaintiffs were housed in this District and all of the claims apparently arose

18   in this District. (*See* Dkt. # 4.)

19         Plaintiffs allege in their complaint that due to the removal of the dishwasher at SCCC, and

20   implementation of a new three-tank dish cleaning process, eating utensils (trays, sporks, and cups)

21   do not get properly cleaned and Plaintiffs have been forced to ingest a harmful pesticide sanitizer

22   which is part of the new cleaning process. (Dkt. # 13 at 16-18, 26.) Plaintiffs claim that the

23   sanitizer has resulted in health issues for some of them, including vomiting and diarrhea, and that

ORDER TO SHOW CAUSE - 1

the new cleaning process also spreads harmful bacteria and viruses, including COVID-19. (*See id*.) Plaintiffs also allege that some of the named Defendants have been deliberately indifferent to their safety in relation to COVID-19 by failing to comply with facial covering and social distancing mandates. (*Id*. at 20, 27.)

Plaintiffs allege that they have been subjected to retaliation for attempting to challenge the new cleaning process, and that Defendants destroyed portions of Plaintiffs' legal records and files and prevented them from working together to litigate legal actions against prison officials relating to the new cleaning process. (*Id*. at 18-19.) Plaintiffs claim that State of Washington and Washington Department of Corrections ("DOC") officials have engaged in a conspiracy to obstruct justice and deprive them of their constitutional rights, apparently in relation to Plaintiffs' attempts to challenge the new cleaning process. (*Id*. at 21.) Relatedly, Plaintiffs claim that Magistrate Judge J. Richard Creatura and Deputy Clerk Tyler Campbell, having knowledge of the wrongs committed by other named Defendants, failed to prevent those wrongs by "cancelling and returning a check from Alvin Hegge to pay for his share of the filings [sic] fee."[1] (*Id*.)

Finally, Plaintiffs allege that three attorneys who provide contract services to the DOC failed to provide legal assistance and prevented prisoners from providing legal assistance to each other, resulting in the continued false imprisonment of Mr. Hegge and Plaintiffs Jeffrey Ziegler and Brian Garvie (the Court presumes this is a reference to named Plaintiff Eugene B. Garvie). (*Id*. at

---

[1] This claim relates to a payment Mr. Hegge made in another case currently pending in this Court, *Mickens v. Inslee, et al*., C20-5259-RJB-JRC. (*See* Dkt. # 13-4 at 42-43.) The complaint filed in *Mickens* identified over 30 Plaintiffs and raised claims substantially similar to those asserted in this action. *See* C20-5259-RJB-JRC, Dkt. # 1-1. The Court ultimately determined that that case should proceed as to only the first named Plaintiff, Rory Mickens. *Id*., Dkt. ## 59, 65. The remaining Plaintiffs, including Mr. Hegge, were dismissed without prejudice to those individuals instituting new, separate lawsuits. *Id*. Rather than file separate lawsuits, fifteen of the Plaintiffs dismissed from the *Mickens* case joined with four other prisoner Plaintiffs to file this action.

20-21, 27.) Plaintiffs identify forty-nine Defendants in their complaint and they request damages. (*Id*. at 1, 30.)

At present, there are a number of outstanding deficiencies relating to filing fee requirements and there are also significant deficiencies in the existing pleading. However, prior to addressing such deficiencies, the Court must first address whether this action should proceed as a single action or as several separate actions given the practical difficulties of litigating a case involving multiple *pro se* prisoner Plaintiffs.

As an initial matter, the Court notes that Plaintiffs seek to certify this action as a class action under Fed. R. Civ. P. 23(c), and the complaint identifies Mr. Hegge as the "Representative" under Fed. R. Civ. P. 23(a). (Dkt. # 13 at 1.) Mr. Hegge, however, is proceeding *pro se* as are all of the other purported Plaintiffs. The Ninth Circuit has made clear that a *pro se* litigant has no authority to appear as an attorney for others. *See C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (*citing Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962)); *McShane v. United States,* 366 F.2d 286, 288 (9th Cir. 1966). Because Mr. Hegge does not have authority to appear on behalf of any other litigants, this action is not maintainable as a class action.

The Court must therefore determine whether joinder of all nineteen Plaintiffs in a single action is either proper or practical. Rule 20 of the Federal Rule of Civil Procedure permits joinder of plaintiffs in a single action if they assert any right to relief arising out of the same occurrence or series of occurrences and if any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). However, Rule 21 of the Federal Rules of Civil Procedure authorizes the Court, on just terms, to sever claims. Fed. R. Civ. P. 21; *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir.1980) (even if the specific requirements

ORDER TO SHOW CAUSE - 3

of Rule 20 may be satisfied, a trial court must examine other relevant factors to determine if joinder of a party will comport with principles of fundamental fairness).

Though the complaint, in general, is not particularly well pled, there appear to be at least some claims arising out of the same occurrence and which may involve questions of law or fact common to all Plaintiffs. In particular, the claims pertaining to the SCCC's alleged kitchen cleaning process and to the alleged failure of SCCC staff to enforce facial covering and social distancing mandates may meet these criteria. However, there are also claims that appear to implicate a smaller subset of Plaintiffs. In particular, the claims pertaining to the alleged retaliatory actions of Defendants, the seizure of legal documents, and the actions of contract counsel do not clearly involve questions of law or fact common to all Plaintiffs. The Court observes that while all of the claims asserted appear to involve Mr. Hegge in some fashion, the degree of involvement of other Plaintiffs in the various claims is less clear. Assuming that even some of the claims might be properly joined under Rule 20, there are numerous practical difficulties which pose challenges in multi-plaintiff prisoner litigation.

Because Plaintiffs cannot represent others' legal interests, they *all* must sign the complaint and any future joint pleadings. *See* Fed. R. Civ. P. 11 ("Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented."). This presents a significant logistical burden, which could potentially delay resolution of the case and, indeed, the issue is already evident as one of the named Plaintiff's, Robert Theiry, failed to sign the complaint and is apparently no longer confined at SCCC.[2] Three additional Plaintiffs – Jacob Clark, Brian Champaco, and Christopher Bowman – are no longer confined at SCCC which will make their continued participation challenging if not impossible. It also seems likely,

---

[2] Mr. Theiry has been notified of this deficiency (dkt. # 8), but he has yet to correct it.

ORDER TO SHOW CAUSE - 4

if not inevitable, that additional Plaintiffs could be released or transferred out of SCCC before this case could be fully litigated.

Moreover, even if all nineteen Plaintiffs were actually able to sign each document, the document would need to be circulated among them for signing, and neither the parties, nor the Court, would be certain whether the pleading had been altered by one of the Plaintiffs prior to filing. The Court is also concerned that there might be a temptation for one Plaintiff to sign a pleading on behalf of another Plaintiff, with or without the other Plaintiff's knowledge, in the interest of expediency or, indeed, in the interest of maintaining an action which would otherwise be wholly unable to proceed if all signatures could not be acquired. Each Plaintiff is responsible for knowing what is filed on his behalf, and all Plaintiffs must agree on all joint filings made in a single action.

Another consideration of significance is that though there may be common issues of fact underlying some of the claims, Plaintiffs' individual claims will also involve independent factual allegations which would require separate and distinct evidence, evaluations, and analyses. For example, one Plaintiff's allegation that he suffered from vomiting and stomach issues after eating at the SCCC kitchen will require entirely different evidence than another Plaintiff's claim that he is subject to inadequate cleaning of the SCCC kitchen eating utensils but suffers no symptoms as a result of the alleged lack of sanitation. The same is true for claims pertaining to the failure of staff to enforce mandates regarding facial coverings and social distancing because allegations concerning the type and degree of harm suffered by different Plaintiffs is likely to be based on different evidence. The fact-specific nature of each Plaintiff's claims and analysis of any resulting constitutional injury ultimately could cause delay and confusion in the resolution of this matter.

ORDER TO SHOW CAUSE - 5

1    It is worth noting as well that group litigation creates countervailing costs. Each

2    submission to the court must be served on all other co-Plaintiffs in the same action. *See* Fed. R.

3    Civ. P. 5. In this case, that would mean each Plaintiff would be required to pay for postage and

4    copying costs of filing any motion, brief, or other papers on the eighteen other Plaintiffs, which

5    means the cost will be significantly greater than if there were a single Plaintiff.

6    Finally, the Court observes that only two of the named Plaintiffs have filed applications

7    to proceed *in forma pauperis* after being notified of the deficiencies by the Clerk's Office, while

8    Mr. Hegge has actually paid the full filing fee. (*See* Dkt. ## 7, 11, 12; Docket Entry dated

9    1/19/2021.) The fact that Mr. Hegge has paid the filing fee does not relieve the remaining

10   Plaintiffs of their obligation to meet the filing fee requirement. The few courts that have

11   considered the issue agree that prisoner-plaintiffs who proceed together in one action must each

12   pay the full filing fee which means they must, at the very least, qualify to proceed *in forma*

13   *pauperis*. *See, e.g., Boriboune v. Berge,* 391 F.3d 852, 854–56 (7th Cir. 2004); *Hubbard v.*

14   *Haley,* 262 F.3d 1194, 1196–98 (11th Cir. 2001).

15   For the reasons set forth above, it appears that Plaintiffs are not properly joined and that

16   severing Plaintiffs into individual cases will alleviate the obstacles to multi-plaintiff prisoner

17   litigation but still provide Plaintiffs with an avenue to pursue their claims. In instances such as

18   this, the Court can generally dismiss all but the first named Plaintiff without prejudice to the

19   institution of new, separate lawsuits by the dropped Plaintiffs. *Coughlin v. Rogers*, 130 F.3d

20   1348, 1350 (9th Cir. 1997). Plaintiffs will not be disadvantaged if they are not permitted to

21   proceed jointly under Rule 20, and any benefits that Plaintiffs may enjoy in proceeding as co-

22   Plaintiffs is not thwarted by requiring them to proceed in separate actions.

23

ORDER TO SHOW CAUSE - 6

For example, separate cases would prevent a deficiency caused by one Plaintiff – such as the lack of signature or transfer to another facility – from adversely impacting the rights of the other Plaintiffs. In addition, any delays in arranging for nineteen prisoners to coordinate and sign their pleadings would be alleviated. Further, any advantage afforded to a *pro se* multi-plaintiff case is not lost by requiring Plaintiffs to proceed in separate actions, Plaintiffs may still coordinate their litigation efforts to the extent their incarceration allows them to communicate and share documents.

In addition, the Court could order consolidation of some or even all of the cases, under appropriate circumstances, in order to make discovery, dispositive motions and trial more efficient for the parties and the Court. *See* Fed. R. Civ. P. 42(a) (The Court notes permissive joinder under Rule 20 and consolidation under Rule 42(a) are separate and distinct principles. Under Rule 42(a): "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." The primary purpose of the rule is to promote trial court efficiency and avoid the danger of inconsistent adjudications); *see also E.E.O.C. v. HBE Corp.,* 135 F.3d 543, 551 (8th Cir. 1998).

Based on the foregoing, this Court hereby ORDERS as follows:

(1)     Plaintiffs are directed to SHOW CAUSE not later than ***March 31, 2021***, why all but the first named Plaintiff, Mr. Hegge, should not be dismissed without prejudice to the institution of new, separate lawsuits by the dropped Plaintiffs pursuant to Federal Rule of Civil Procedure 21. In the alternative, Plaintiffs have an opportunity to withdraw from this litigation before the case progresses further. If the Court decides that all but Mr. Hegge should be dismissed, each individual Plaintiff will have the opportunity to litigate his claims in a separate

ORDER TO SHOW CAUSE - 7

civil action. If any Plaintiff fails to timely respond to this order or files a response indicating that he does not wish to further participate in this action, this will result in a recommendation that the non-responding Plaintiff be dismissed from this action. Each Plaintiff must serve any response that he makes to this order, and anything else he submits to the Court, on the other Plaintiffs.

(2)     The Clerk is directed to send copies of this Order to each Plaintiff and to the Honorable Barbara J. Rothstein.

DATED this 22nd day of February, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER TO SHOW CAUSE - 8